Filed 10/2/23  P. v. W.P. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080620 |
| v. | (Super.Ct.No. FVI010342) |
| W.P., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lorenzo R. Balderrama, Judge.  Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant W.P. appeals from the trial court's denial of her petition for restoration of sanity under Penal Code section 1026.2 (the Petition).  For the reasons set forth *post*, we affirm the judgment.

1

## STATEMENT OF THE CASE

On October 19, 2021, defendant filed the Petition contending that she was no longer a danger "due to a mental defect, disease or disorder and that she should be fully restored to sanity, released from CONREP [Conditional Release Program], and unconditionally released into the community."

On December 8, 2022, a trial on the Petition commenced. Both parties presented most of their evidence via exhibits. Moreover, defendant read a statement to the court. On December 12, 2022, in a minute order, the court wrote: "Court denies [the Petition] for release from outpatient treatment. Court orders MHM [the administrator of CONREP] to provide the court with an annual report by 05/23/23. Court orders exhibits to be returned to the parties."

On January 31, 2023, defendant filed a timely notice of appeal.

## STATEMENT OF FACTS

At the hearing on the Petition, defendant "[did] not wish to testify." Instead, she read a prepared statement "into the record."

Defendant acknowledged that she was committed to Patton State Hospital for mental health treatment based on a crime she committed in 2000. Defendant stated that she had participated in hundreds of sessions with various treatment providers and had worked on issues including understanding her mental disorder and criminal behavior.

In addition to these one-on-one meetings, defendant also attended hundreds of group therapy sessions. She completed two drug relapse prevention programs, each of which lasted six months. She also attended and continues to attend Alcoholics

2

Anonymous (AA) and Narcotics Anonymous (NA) on a regular basis. Defendant completed a comprehensive recovery wellness action plan and claimed: "I have been diligent in understanding my mental illness and learned throughout the years how to recognize my warning signs, triggers, and how to utilize my coping skills."

Defendant then stated: "Your Honor, I have learned how important my medication is and how vital abstaining from alcohol and drugs are. I have learned from decompensation in 2009 that if I stop my medication and/or use alcohol and drugs that I could become dangerous to others, which is not what I want to ever happen again. It may be odd to say that I am thankful for that decompensation, but I learned how vital it is in continuing my medication and abstaining from drugs and alcohol and continuing treatment is."

Defendant claimed not to have suffered any symptoms of her mental disorders in 13 and a half years. She stated she would continue to attend AA, NA, and therapy even after her discharge, because she wanted to remain safe and in the community. She stated that she had family and friends who would support her, and had arranged for a bridge prescription to keep her medication going while she moved to Alabama. She located a psychiatrist in Alabama who would take care of providing her medication going forward. She had also located places to attend AA and NA meetings near her intended new home in Alabama.

Defendant expressed remorse for what she did and stated she understood what she put her victim, his family, and the victim's secretary through on the day she committed

her crime. She apologized to the court and the people for her behavior and asked the judge to restore her to sanity and give her another chance at an independent life.

Defendant submitted exhibits with the court documenting her AA/NA attendance sheets, her ongoing participation in treatment programs, prescriptions to ensure medication coverage during any transition, certificates documenting defendant completing treatment programs, detailed relapse prevention plans created for defendant, and investigator reports from the public defenders office containing numerous statements from different individuals in support of defendant.

The exhibits submitted by the prosecutor included a certified copy of defendant's record of arrests and prosecutions, reports prepared by social workers giving insight into defendant's mental health issues and diagnoses, a report on defendant's suitability for sanity restoration based on her psychological evaluations, criminal, physical health and mental health histories, reports on defendant's diagnosis for borderline personality disorder and defendant's lack of acceptance and insight into the disorder, reports analyzing the unfeasibility of defendant's postrelease plans, notes from individual therapy sessions, and other documents providing information, such as defendant's prescriptions.

After defendant read her statement to the court, the trial court asked, "Counsel, is the matter submitted on the documents that you have offered to the Court?" Both defense counsel and the prosecutor responded "yes."

The prosecutor then asked if he could make a brief comment, and then stated:

"I think we have exhibits and we have [defense counsel's] exhibits, and I know you read them carefully. I believe once you read the exhibits, you'll notice that there appears to be only one issue that the parties disagree. All the rest, I think both parties pretty much agree, and the issue—appears to me to be the only issue is the diagnosis of the borderline personality disorder. CONREP believes that [defendant] has been diagnosed, and my understanding is that [defendant] disagrees with that diagnosis. I believe it really comes down to that issue, whether that diagnosis is in existence or—or not and, if it is, how it affects the fact of whether [defendant] has been restored or not. [¶] With that, submit."

## DISCUSSION

After defendant appealed, and upon her request, this court appointed counsel to represent her. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issue to assist the court in its search of the record for error:

"If this court concludes that *Wende/Anders* procedures are not applicable to SVP cases, appellate counsel and this court must comply with the procedures outlined in *Ben C.*[1]"

---

[1] *In re Conservatorship of Ben C.* (2007) 40 Cal.4th 529.

Thereafter, counsel identified issues of sufficiency of the evidence, *Sanchez*[2] error, and inadmissible hearsay as potential issues on appeal.

After defense counsel filed a brief under *People v. Wende*, *supra*, we offered defendant an opportunity to file a personal supplemental brief, and she has not done so.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error.  We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists.  (*Id.* at p. 126; *People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
                                                          J.

We concur:


McKINSTER_____
                    Acting P. J.


CODRINGTON_____
                              J.

---

[2] *People v. Sanchez* (2016) 64 Cal.4th 665.